# FIFTH DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

_____

Case No. 5D2024-2438
LT Case No. 05-2023-CF-45896-B

_____

RENE WOODALL LEMOS,

Appellant,

v.

STATE OF FLORIDA,

Appellee.

_____

On appeal from the Circuit Court for Brevard County.
Aaron J. Peacock, Acting Circuit Judge.

Matthew R. McLain, of McLain Law, P.A., Longwood, for
Appellant.

James Uthmeier, Attorney General, Tallahassee, and Kristen L.
Davenport, Assistant Attorney General, Daytona Beach, for
Appellee.


March 20, 2026


SOUD, J.

Appellant Rene Lemos appeals her conviction and 18-year
prison sentence for accessory after the fact to the first degree
murder of Nicholas Mitchell. She contends that the State's
purported oral amendment of count I of the indictment by which

she was charged was fundamental error depriving the trial court of subject matter jurisdiction and mandating reversal.[1] We have jurisdiction. *See* Art. V, § 4(b)(1), Fla. Const.; Fla. R. App. P. 9.030(b)(1)(A).

While the State's intended oral amendment of the grand jury's indictment is plainly impermissible under settled law, we affirm because Lemos waived any due process objection to this patently defective process by joining the State in urging the trial court to accept the procedure to facilitate a favorable plea agreement. Lemos cannot now contest that in which she willingly participated.

I.

Mitchell was shot to death in Brevard County, Florida. A few days later, his white BMW was stopped after a high-speed chase in Alabama that resulted in a crash. The BMW was driven by Robert Lanning. Lemos arrived at the crash scene shortly after. Ultimately, the grand jury returned its indictment charging Lemos, along with her co-defendant Lanning, with four crimes, including first degree felony murder.

The State and Lemos, who had no prior felony convictions, reached a plea agreement by which Lemos would enter a plea to accessory after the fact to first degree murder. Lemos's agreement provided a cap of 18 years in prison and up to life on probation.

At the plea hearing, the State announced its intention to orally amend the indictment to bring the accessory charge. When the trial judge expressed concern about the State's ability to amend the indictment, Lemos's counsel stated, "[w]hat we would like to do is to consider the charge of accessory after the fact as a stipulated lesser included offense to" the first degree murder charged in count I of the indictment. The prosecutor described the "unusual problem" of effectuating the plea agreement and said, "Okay. So, we can do that. I'll pretend that accessory after the fact is a lesser to murder one. We all know it's not. But that's—we can

---

[1] Lemos also argues the trial court erred in declining her request for a downward departure sentence. We affirm the trial court's decision in this regard without further comment.

2

do it that way." Based on this legal fiction, the prosecutor announced a supposed oral amendment to count I of the indictment to charge accessory after the fact to first degree murder and dismissal of counts II–IV.

Importantly, defense counsel and Lemos, on her own behalf during the plea colloquy, affirmatively participated in the process and expressly agreed to waive any defense or procedural defects. Pertinent here, the written plea agreement reflected that Lemos would "plea to one Count only: Accessory after the Fact to 1st Degree Murder in violation of Florida Statutes Section 782.04 and 777.03. Said crime is a Life Felony . . . . [T]he Defendant will waive forever any concerns or irregularities as to the form of the charging document."

The trial court relented, accepted the plea, and, after a sentencing hearing, adjudged Lemos guilty of accessory after the fact to first degree murder and sentenced her to 18 years in prison, the cap allowed by the plea agreement.

Lemos's appeal followed.

## II.

Lemos argues that the State was without legal prerogative to amend the grand jury's indictment "despite [her] stipulation." And when it did so, the trial court was thereafter without subject matter jurisdiction to adjudicate Lemos guilty and sentence her for accessory after the fact, an uncharged crime. Claiming fundamental error, she posits her convictions and sentence must be vacated.

While Lemos is correct that the State's attempt to amend the indictment was impermissible, she stretches her argument too far in suggesting that her conviction and sentence must be reversed because the purported amendment deprived the trial court of its subject matter jurisdiction. Lemos actively participated in the process to facilitate a favorable plea agreement. And while this in no way legitimizes attempting to amend the indictment—which the law flatly forbids—she has thereby waived any due process defect.

3

A.

We first address that which is readily known and long established in law. The endeavor to orally amend the indictment was flawed at its inception. Once returned by a grand jury, an indictment may not be amended to charge an additional, similar, or different offense—not by the State, a trial judge, or even the grand jury that returned the indictment. *See Smith v. State*, 424 So. 2d 726, 729 (Fla. 1982);[2] *see also Akins v. State*, 691 So. 2d 587, 588 (Fla. 1st DCA 1997) ("[A]n indictment, unlike an information, cannot be amended, not even by a grand jury, to charge a different, similar, or new offense." (citing *Smith,* 424 So. 2d at 729)). Only an amendment to form is permitted—that is to say, an "indictment may be amended only to correct a defect, error, or omission in a caption or to eliminate surplusage." *See Johnson v. State*, 969 So. 2d 938, 953 (Fla. 2007) (citing Fla. R. Crim. P. 3.140(c)(1), (i)–(j)).

Here, Lemos stood charged by indictment with four crimes, including first degree felony murder (count I). The indictment did not charge her with accessory after the fact to first degree murder. And the State's endeavor to amend the indictment based upon the "pretend[ed]" legal fiction that accessory after the fact would serve as a lesser-included offense to the murder charge is impermissible under Florida law. This remains so even though Lemos joined in the attempted amendment to facilitate a favorable plea agreement.

It is of no moment that the State sought to address what it believed to be an "unusual problem." If the State desired to present a plea agreement to the trial court for its consideration, that's the State's prerogative. But it must follow Florida law in how it proceeds to its chosen end. To properly effectuate their plea agreement, and preserve Lemos's due process rights, the State was required to either (a) go back to the grand jury and seek a second

[2] As *Smith* makes clear, a grand jury can charge an additional, similar, or different offense by filing a second indictment, even while a prior indictment is pending. "[T]he process is significantly different. Before filing the second indictment, the grand jury must independently evaluate the case. This requirement ensures that the grand jury itself finds the filing of additional or different charges appropriate." *Smith*, 424 So. 2d at 729.

4

or superseding indictment, *see Smith*, 424 So. 2d at 729, or (b) more plausibly, file an information charging the crime to which Lemos was to plead, *see Johnson*, 969 So. 2d at 953 ("[T]he grand jury and state attorney have concurrent authority to charge noncapital crimes . . . . [T]he State's method of charging robbery in this case is permissible because it concerned a noncapital crime . . . . The state attorney's concurrent authority permitted charging the count by information.").

B.

But does this flawed approach deprive the trial court of its subject matter jurisdiction, as Lemos suggests, such that vacating Lemos's conviction and sentence is required? It does not. Here, the issue is not one of "jurisdiction" but one of due process. And as with most rights, a defendant such as Lemos can waive a defect in the charging instrument, even one reaching constitutional dimension. *See Colson v. State*, 717 So. 2d 554, 556 (Fla. 4th DCA 1998). Lemos did just that by actively joining in the request that the trial court accept an amendment to the indictment by which she was charged.

1.

Florida grants to the circuit courts subject matter jurisdiction over "all felonies." § 26.012(2)(d), Fla. Stat. (2023); *see also Carbajal v. State*, 75 So. 3d 258, 262 (Fla. 2011) (citing *McLean v. State,* 2 So. 5, 5 (Fla. 1887)). "Subject matter jurisdiction" means "the '[p]ower of a particular court to hear the type of case that is then before it.'" *Carbajal*, 75 So. 3d at 262 (citing *Fla. Star v. B.J.F.,* 530 So. 2d 286, 288 (Fla. 1988) (quoting *Black's Law Dictionary* 767 (5th ed. 1979))).

A circuit court's subject matter jurisdiction is invoked in a felony case by the filing of an extant information, indictment, or presentment by the State. *See id.*; *see also* Art. I, § 15, Fla. Const. Thus, the trial court's subject matter jurisdiction was invoked in the State's case against Lemos by the filing of the indictment below.

5

## 2.

While attempting to amend the indictment was plainly improper, it did not, contrary to Lemos's argument, divest the court of its subject matter jurisdiction—that is to say, the "[p]ower . . . to hear the [felony] case that is then before it." *Carbajal*, 75 So. 3d at 262. Rather, the United States Supreme Court has made clear that the matter is properly viewed through the lens of one's constitutional right to due process. *See Thornhill v. Alabama*, 310 U.S. 88, 96 (1940) ("Conviction upon a charge not made would be sheer denial of due process." (quoting *De Jonge v. Oregon*, 299 U.S. 353, 362 (1937))).

More than 60 years after *De Jonge* and *Thornhill*, the Court further clarified the jurisdictional concern. *See United States v. Cotton*, 535 U.S. 625 (2002). There, the Court rejected the notion that a defective indictment was a "'jurisdictional' defect" requiring the vacating of the underlying sentences. *See id.* at 629–31. The Court noted such a view found its origin in *Ex parte Bain,* 121 U.S. 1 (1887), where an indictment charging Bain with certain crimes was amended by the trial court to remove superfluous language. *See id.* at 629–30. *Bain* ultimately concluded "the jurisdiction of the offence [was] gone, and the court [had] no right to proceed any further in the progress of the case for want of an indictment." *See id.* at 629 (alteration in original). The *Cotton* Court rejected *Bain*'s "elastic concept of jurisdiction" in favor of what that term "means today, *i.e.*, 'the courts' statutory or constitutional *power* to adjudicate the case.'" *See id.* at 630 (emphasis in original) (citation omitted). Noting that "[p]ost-*Bain* cases confirm that defects in an indictment do not deprive a court of its power to adjudicate a case . . . . [i]nsofar as it held that a defective indictment deprives a court of jurisdiction, *Bain* is overruled." *Id.* at 630–31.

Against this backdrop, it is apparent that a trial court does not lose subject matter jurisdiction when the State improperly endeavors to amend an indictment. Rather, proceeding in such manner would be an improper exercise of the trial court's subject matter jurisdiction that, if not waived by a defendant, would be violative of due process. *See Jaimes v. State*, 51 So. 3d 445, 448 (Fla. 2010) (first citing *Thornhill*; then citing *Price v. State,* 995 So. 2d 401, 404 (Fla. 2008)).

3.

But here, by affirmatively joining in the State's endeavor to amend the grand jury indictment in order to procure a favorable plea agreement, Lemos has waived any due process irregularity. Indeed, in the plea agreement Lemos expressly "waive[d] forever any concerns or irregularities as to the form of the charging document." That same agreement also set forth the charge to which Lemos was to plead—"Accessory after the Fact to 1st Degree Murder in violation of Florida Statutes Section 782.04 and 777.03. Said crime is a Life Felony."

Unlike subject matter jurisdiction, which "involves a court's power to hear a case [and] can never be forfeited or waived," *see Cotton*, 535 U.S. at 630, defendants "may waive constitutional rights," *Nipper v. State*, 398 So. 3d 600, 610 (Fla. 1st DCA 2024) (quoting *Blair v. State*, 698 So. 2d 1210, 1213 (Fla. 1997)), including the right to due process. Of course, a waiver is the knowing, voluntary, and intelligent relinquishment or abandonment of a known right or privilege. *See Nipper*, 398 So. 3d at 610 (citing *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938)); *see also Tucker v. State*, 559 So. 2d 218, 219 (Fla. 1990). And as the Eleventh Circuit has concluded, the "right to be charged by a grand jury is a personal right of the defendant and does not go to the [trial] court's subject matter jurisdiction because it may be waived." *United States v. Brown*, 752 F.3d 1344, 1349 (11th Cir. 2014) (citation omitted).

And the record before us makes clear that Lemos, through counsel and on her own behalf in the plea colloquy with the trial judge, knowingly, voluntarily, and intelligently waived all objections to the irregular effort to amend the indictment. She affirmatively joined the State in asking the judge to allow the amendment so that she could enter into a favorable plea agreement. Indeed, the desired plea agreement provided a cap of 18 years in prison on the first degree felony accessory charge rather than a mandatory life sentence for the capital crime of first degree murder. To that end, Lemos's written plea agreement specifically stated she "waive[d] forever any concerns or irregularities as to the form of the charging document."

As a result, while Lemos joining the effort to orally amend the indictment does not in any way legitimize the attempt to amend the indictment (an endeavor that should not be repeated or followed), it does constitute a waiver of all due process objections to the improper procedure in this case. Lemos may not now be heard to complain of that in which she so willingly participated— and even encouraged the trial court to accept.

## III.

Accordingly, we AFFIRM Lemos's conviction and sentence for the crime of accessory after the fact to the first degree felony murder of Nicholas Mitchell and the resulting 18-year prison sentence.

We recognize that our decision here conflicts with the First District's decision in *Akins*. While we agree with the First District that "an indictment cannot be amended by stipulation of the parties," we do not agree with that court's conclusion that such an attempted amendment strips the trial court of subject matter jurisdiction. *Akins*, 691 So. 2d at 589. As a result, we CERTIFY CONFLICT with *Akins v. State*, 691 So. 2d 587 (Fla. 1st DCA 1997).

It is so ordered.

EDWARDS and HARRIS, JJ., concur.

———————————————

***Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.***

———————————————